## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Phillip F.,[1]                                          Case No. 23-cv-3666 (DJF)

                    Plaintiff,

v.
                                                        **ORDER**

Martin J. O'Malley,
*Commissioner of Social Security Administration*,

                    Defendant.

Pursuant to 42 U.S.C. § 405(g), Plaintiff Phillip F. ("Plaintiff") seeks judicial review of the Commissioner of Social Security's ("Commissioner") final decision denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Decision").  This matter is before the Court on the parties' briefs.  Because substantial evidence supports the Decision, the Court denies Plaintiff's request for relief (ECF No. 10), grants Defendant's request for relief (ECF No. 11), and dismisses this matter with prejudice.

## BACKGROUND

I.      **Plaintiff's Claim**

Plaintiff applied for DIB on April 21, 2022.  (Soc. Sec. Admin. R. (hereinafter "R.") 68.)[2] At that time he was 53-years old with a high-school education and prior work experience as a

---

[1] This District has adopted a policy of using only the first name and last initial of any nongovernmental parties in orders in Social Security matters.

[2] The Social Security administrative record (R.) is filed at ECF No. 8.  For convenience and ease of use, the Court cites to the record's pagination rather than the Court's ECF and page numbers in citing to the Administrative Record.  All other citations refer to ECF docket and page numbers.

security guard.  (R. 68, 192.)  Plaintiff alleged he became disabled on September 21, 2021 (R. 68), resulting from degeneration of his lumbar spine; depression, anxiety, diabetic neuropathy in his feet and fingers, and arthritis in his hip, knees, and lumbar spine (R. 191).

## II.   Regulatory Background

An individual is considered disabled for purposes of Social Security disability benefits if he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  In addition, an individual is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 1382c(a)(3)(B).  "[A] physical or mental impairment is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 1382c(a)(3)(D).

The Commissioner has established a sequential, five-step evaluation process to determine whether an individual is disabled.  20 C.F.R. § 416.920(a)(4).  At step one, the claimant must establish he is not engaged in any "substantial gainful activity."  20 C.F.R. § 416.920(a)(4)(i).  The claimant must then establish at step two that he has a severe, medically determinable impairment or combination of impairments.  20 C.F.R. § 416.920(a)(4)(ii).  At step three, the Commissioner must find the claimant is disabled if the claimant has satisfied the first two steps and the claimant's impairment meets or is medically equal to one of the impairments listed in 20 C.F.R. Part 404,

Subpart P, App'x 1 ("Listing of Impairments" or "Listing").  20 C.F.R. § 416.920(a)(4)(iii).[3]

If the claimant's impairment does not meet or is not medically equal to one of the impairments in the Listing, the evaluation proceeds to step four.  The claimant then bears the burden of establishing his residual functional capacity ("RFC") and proving that he cannot perform any past relevant work.  20 C.F.R. § 416.920(a)(4)(iv); *Young v. Apfel*, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000).

If the claimant proves he is unable to perform any past relevant work, the burden shifts to the Commissioner to establish at step five that the claimant can perform other work existing in a significant number of jobs in the national economy.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).  If the claimant can perform such work, the Commissioner will find the claimant is not disabled.  20 C.F.R. § 416.920(a)(4)(v).

### III.   Procedural History

The Commissioner denied Plaintiff's application for DIB initially (R. 61-67) and on reconsideration (R. 84-88).  On February 21, 2023, at Plaintiff's request (R. 94), an Administrative Law Judge ("ALJ") held a hearing on Plaintiff's application (R. 31-60).  Plaintiff and a vocational expert testified at the hearing.  (R. 31-32.)  Plaintiff was represented by an attorney.  (R. 31.)

After the hearing, the ALJ determined that Plaintiff has non-severe sleep apnea, hypertension, and bladder incontinence, and multiple physical and mental impairments, which at least in combination are severe: flexion contracture of the right fifth finger; carpal tunnel syndrome; diabetes with peripheral neuropathy; osteoarthritis of the left knee and right hip; mild facet degeneration of the lumbar spine; obesity; and history of anxiety and depression.  (R 17.)

---

[3] The Listing of Impairments is a catalog of presumptively disabling impairments categorized by the relevant "body system" affected.  *See* 20 C.F.R Part 404, Subpart P, App. 1.

The ALJ found Plaintiff has moderate limitations in interacting with others and concentrating, persisting, or maintaining pace, with mild limitations in understanding, remembering, or applying information and adapting or managing himself.  But the ALJ found Plaintiff's mental impairments do not severely limit any area of broad functioning.  (R. 18-20.)  The ALJ concluded that Plaintiff's impairments, alone or in combination, do not meet or medically equal any impairment in the Listing.  (R. 17-20.)

At step four of the sequential analysis, the ALJ thoroughly catalogued the mental and physical health evidence in the record (R. 20-24) and determined that Plaintiff has:

> the [RFC] to perform light work as defined in 20 CFR 404.1567(b) (lift/carry, push/pull up to 20 pounds occasionally and 10 pounds frequently; sit for about 6 hours and stand/walk for about 6 hours total in an 8-hour workday) with the following limitations: occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally stoop, kneel, crouch, and crawl; and frequently handle finger and feel with the bilateral upper extremities. He must be able to alternate between standing and sitting every thirty minutes for one to two minutes in the immediate vicinity of the workstation and never be exposed to hazards such as moving machinery and unprotected heights. He is limited to performing simple, routine, and repetitive tasks, but not at a production-rate pace (so, for example, no assembly line work); and can respond appropriately to superficial contact with supervisors and co-workers (defined as contact limited to the performance of job duties and not requiring the individual to be responsible for resolving conflict).

(R. 20-21.)

Next, the ALJ found Plaintiff is unable to perform his past relevant work as a security guard.  (R. 24-25.)  The ALJ then evaluated whether Plaintiff can perform any other jobs that exist in significant numbers in the national economy.  (R. 25-26.)  Based the vocational expert's testimony, and considering Plaintiff's age, education, work experience, and RFC, the ALJ determined Plaintiff is able to perform such other jobs, including: "housekeep/cleaner" (DOT #323.687-014, approximately 361,000 jobs in the national economy); "laundry worker" (DOT #302.685-010, approximately 2,070 jobs in the national economy); and "inspector/hand-

packager" (DOT #559.687-074, approximately 351,000 jobs in the national economy).  (R. 25-26.)

The ALJ concluded on that basis that Plaintiff is not disabled.  (R. 26.)  The Appeals Council

denied Plaintiff's request for review of the ALJ's Decision (R. 1-6), and this lawsuit followed.

## DISCUSSION

## I.      Standard of Review

The Court's review of the Commissioner's Decision is limited to determining whether the

Decision is "supported by substantial evidence on the record as a whole." *McKinney v. Apfel*, 228

F.3d 860, 863 (8th Cir. 2000).  "Substantial evidence … is more than a mere scintilla." *Biestek v.*

*Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation omitted).  It is "such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison*

*Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  This "threshold … is not high." *Id*.  "If, after reviewing

the record, the court finds it is possible to draw two inconsistent positions from the evidence and

one of those positions represents the [ALJ's] findings, the court must affirm the [ALJ's] decision."

*Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012) (quotation omitted).

Remand is warranted, however, when the ALJ's opinion contains insufficient factual

findings that "considered in light of the record as a whole, are insufficient to permit [the] Court to

conclude that substantial evidence supports the Commissioner's decision." *Scott v. Astrue*, 529

F.3d 818, 822 (8th Cir. 2008); *see also Chunn v. Barnhart*, 397 F.3d 667, 672 (8th

Cir. 2005) (remanding because the ALJ's factual findings were insufficient for meaningful

appellate review).  At minimum, the ALJ must build a logical bridge between the evidence and the

RFC she creates.  She does so by "includ[ing] a narrative discussion describing how the evidence

supports each conclusion."  Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7.

"[T]he [ALJ] must also explain how any material inconsistencies or ambiguities in the evidence

in the case record were considered and resolved." *Id.*; *see also Lee R. v. Kijakazi*, No. 20-cv-1989 (BRT), 2022 WL 673259, at *4 (D. Minn. Mar. 7, 2022) (finding ALJ failed to create a "logical bridge" between the evidence and his conclusions); *Weber v. Colvin*, No. 16-cv-332 (JNE/TNL), 2017 WL 477099, at *26 (D. Minn. Jan. 26, 2019) (same).

## II.    Analysis

Plaintiff argues the Court should reverse the ALJ's Decision on the ground that her RFC determination is flawed.  Plaintiff specifically contends the ALJ erroneously assessed his RFC because she: (1) improperly discounted his reported limitations; and (2) improperly discredited his nurse practitioner's medical opinion.  (ECF No. 10 at 13-24; ECF No. 12 at 1-4.)  Plaintiff further contends that the ALJ failed to develop the record fully and fairly.  (ECF No. 10 at 25-28; ECF No. 12 at 4-5.)  Defendant argues the ALJ appropriately developed the record and applied proper legal standards, and that substantial evidence supports her findings.  (*See generally* ECF No. 11.)

### A.    Plaintiff's RFC

Plaintiff's first two arguments challenge the ALJ's RFC determination.  RFC is defined as the most a claimant can do despite his limitations.  20 C.F.R. § 404.1545(a).  It is the claimant's burden to prove his functional limitations related to his RFC.  *Baldwin v. Barnhart*, 349 F.3d 549, 556 (8th Cir. 2003) (citing *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001)); *accord Charles v. Barnhart*, 375 F.3d 777, 782 n.5 (8th Cir. 2004).  The ALJ bears the primary responsibility for assessing a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and a claimant's own descriptions of the claimant's limitations.  *See* 20 C.F.R. § 404.1545(a)(3); *see also*, *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016); *Roberts v. Apfel*, 222 F.3d, 466, 469 (8th Cir. 2000).

The ALJ in this case cited extensive evidence related to Plaintiff's treatment history, part-time work, daily living activities, and hearing testimony to support her RFC determination. (*See, e.g.*, R. 21-24.)   The ALJ specifically observed that Plaintiff testified he: (1) has no restrictions on his driver's license; (2) suffers from osteoarthritis and problems with his back for which he takes medication; (3) is limited to walking one block and lifting/carrying less than 25 pounds; (4) takes medication for anxiety and sleeps a lot due to his depression, but does not receive therapy; (5) naps for one to two hours three days a week; (6) is able to make meals and clean; (7) is able to bathe, but has difficulty getting in and out of the tub; (8) needs to take breaks when cleaning, cooking, and mowing; (9) had problems with his back and hip while working; (10) has worked at a bus company driving a mini-van since October 2022 and earns $200-$500 per month for driving a two-hour route two to three times a week; (11) believes he could perform the driving job full-time if offered; (12) is able to check email, watch television, do some household chores, and spend time with his wife; and (13) enjoys going to a bar on Friday nights to sing Karaoke.  (R. 22; *see also* R. 37-51, Plaintiff's hearing testimony.)

The ALJ also reviewed Plaintiff's medical records and noted inconsistencies between Plaintiff's subjective complaints and that evidence.  (R. 22-24.)  She found that between October 2020 and April 2022, Plaintiff received only limited and conservative treatment for his peripheral neuropathy and diabetes, but she concluded his exam findings still supported restricting him to a light level of exertion with a limitation in handling, fingering, and bilateral feeling.  (R. 22-23.) She noted that: in November 2020, Plaintiff's gait and motor exam were both normal, and his sensation and light touch were intact (R. 22, citing R. 405-410); in February 2021, Plaintiff was assessed with a body mass index consistent with obesity (R. 22, citing R. 425-463); and in March 2021, his neurologic exam findings were normal (R. 22, citing R. 425-463).  Plaintiff reported

worsening left knee and right hip pain in April 2022, but an x-ray of his hip was unremarkable, while an x-ray of his left knee showed chondrocalcinosis of both menisci with medial and lateral osteophytic spurring and patellofemoral joint space narrowing and osteophytic spurring.  (R. 22, citing R. 464-495.)  Plaintiff's doctor diagnosed him with patellofemoral joint osteoarthritis and right hip greater trochanteric bursitis/abductor tendinopathy and administered a steroid injection in Plaintiff's left knee.  (R. 22, citing R. 464-495.)

In July 2022, Plaintiff received additional care related to his diabetes and peripheral neuropathy, and he received another injection in his left knee in August 2022.  (R. 23, citing R. 503-539.)  In December 2022, Plaintiff reported numbness and tingling in his toes and fingers that had been present for 10 years but had not worsened (R. 23, citing R. 503-539).  The ALJ noted that Plaintiff had been able to work full-time despite his neuropathy (R. 23).

In January 2023, Plaintiff reported back pain, bilateral knee pain that caused him to feel unstable, a left limp that affected his right hip, and difficulty grasping due to his neuropathy.  (*See* R. 23, citing 558-572.)  The ALJ observed that an x-ray showed discogenic spurring in Plaintiff's mid lumbar spine and mild facet degeneration in his lower lumbar spine, but his lumbar evaluation was normal (R. 23, citing 558-572).   An MRI of Plaintiff's left knee revealed moderate osteoarthritis of the patellofemoral compartment, mild chondromalacia of the lateral femoral condyle with large subchondral cyst, posterior meniscocapsular junction sprain of the medial meniscus, patellar tendon lateral femoral condyle friction syndrome, mild to moderate popliteus tendinopathy, mild to moderate knee joint effusion, and chronic sequelae of a low grade proximal MCL sprain.  (*See* R. 23, citing R. 553-557).  The ALJ noted that Plaintiff limped on the left when walking to the x-ray room, and he could not feel monofilament, either on the soles or dorsal aspect of his feet up to his ankles, or on the plantar surface of his hands or distal part of his left hand.

(R. 23, citing 558-572.)   The ALJ explained that, based on these symptoms, Plaintiff was diagnosed with continued peripheral neuropathy, left knee pain with degenerative changes, and mild degenerative changes in his lumbar spine.  (R. 23, citing 558-572.)  The ALJ concluded that these findings supported limiting Plaintiff to a reduced range of light exertion with postural limitations.  She stated that she included a limitation to alternate sitting and standing to accommodate for Plaintiff's knee and hip pain, and that she also considered and accommodated for Plaintiff's obesity in determining his RFC.  (R. 23.)  The ALJ explained that the fact that Plaintiff "continued to receive conservative treatment and was also able to persist at a part-time job," supported her conclusion that the record did not support any greater limitations.  (R. 23.)

In January 2023, Plaintiff's nurse practitioner, Christine Werner, diagnosed Plaintiff with chronic low back pain, chronic bilateral knee pain, peripheral neuropathy, diabetes, hyperlipidemia, hypertension, urinary incontinence, depression, anxiety, obesity, decreased hearing, restless leg, and sleep apnea.  (R. 547-552.)  Ms. Werner opined that Plaintiff required numerous limitations, but for reasons discussed in depth below, the ALJ found her opinions unpersuasive.  (*See* R. 22-23, 540-545.)

The ALJ further noted that Plaintiff had received very limited treatment for his mental health.  She found the "[r]ecords do not support [a finding that he has] difficulty getting along with others in general."  But, "giving [Plaintiff] the benefit of doubt," she limited him to "routine,

repetitive tasks," and "limited contact with others to lessen stress."  (R. 24, citing 425-463, 464-496, 496-502.)

Based on all the above, the ALJ thus supported her RFC determination with a thorough review of Plaintiff's medical and mental health records.  She also took into account the non-medical information in the record and the testimony offered at Plaintiff's hearing.

### 1.   The ALJ's Evaluation of Plaintiff's Subjective Complaints

Plaintiff contends the ALJ's RFC determination is flawed because the ALJ wrongly discounted his self-reported limitations and thus erroneously concluded he could perform work that exists in the national economy (ECF No. 10 at 13-22; ECF No. 12 at 1-2).  Plaintiff cites the job requirements of the positions the ALJ identified at step five of the sequential analysis and argues the ALJ failed to "provide good reasons for finding [Plaintiff] not credible in reporting his limitations."  (ECF No. 10 at 12-22.; ECF No. 12 at 1-2.)

During Plaintiff's hearing, the ALJ asked a vocational expert whether a hypothetical person with Plaintiff's age, education, background, work experience, and RFC could perform his past work as a security guard, or any job that exists in significant numbers in the national economy. (R. 54-55.)  The vocational expert testified that such a person could not perform Plaintiff's past work, but he identified three jobs the hypothetical person could perform: "housekeep/cleaner" (DOT #323.687-014); "laundry worker" (DOT #302.685-010); and "inspector/hand-packager" (DOT #559.687-074).  (R. 55.)  The vocational expert also testified that if Plaintiff was limited to sedentary work, Plaintiff would not have any transferrable job skills.  (R. 56-57.)  Based on the vocational expert's testimony, the ALJ concluded Plaintiff is unable to perform his past work as a

security guard, but he is not disabled because he is able to perform the three jobs the vocational expert identified.

Plaintiff does not argue the ALJ erred at step five based on the RFC required to perform these jobs; rather, he argues the ALJ failed to accurately determine his RFC by wrongly discounting his reported complaints. (*See* ECF No. 10 at 12-22; ECF No. 12 at 1-2.) Plaintiff argues, "[t]he ALJ did not provide good reason for rejecting [Plaintiff's] reported limitations, and this error was harmful given [Plaintiff] could not perform the inspector and hand packager job given the standing and walking and fingering and feeling required of that job."[4] (ECF No. 10 at 20.) He similarly contends, "[t]he objective medical evidence did not provide the ALJ much to infer an ability to perform light exertional level work by this morbidly obese man with left knee, back and right hip impairments and diabetes-related peripheral neuropathy." (*Id.* at 22.) Plaintiff claims the ALJ erroneously "faulted [Plaintiff] for working a part-time sedentary driving job and for stating he would attempt to work that job full-time" to conclude he was capable of performing light-level work. (*Id.* at 18-19.) The crux of Plaintiff's argument is that if the ALJ had appropriately limited him to sedentary work, the ALJ would have had to find him disabled. (*See* ECF No. 10 at 15.)

The Court finds that the ALJ employed the correct legal standard and substantial evidence supports her RFC determination. Thus, she did not err in concluding that Plaintiff is capable of performing the jobs identified at step five of the sequential analysis.

---

[4] Plaintiff contends that his ability to perform the laundry worker job, DOT #302.685-010, is "irrelevant" because "it exists in too few numbers to constitute a significant number of jobs in the national economy by itself, with only 2,070 jobs identified." (ECF No. 10 at 15.) The Court need not reach this argument because it finds the ALJ did not err in determining Plaintiff's RFC.

Congress expressly prohibited granting disability benefits based entirely on a claimant's subjective complaints. *See* 42 U.S.C. § 423(d)(5)(A) ("An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability"); 20 C.F.R. § 416.929(a) ("statements about your pain or other symptoms will not alone establish that you are disabled"). When a claimant has produced objective evidence of an impairment that could reasonably cause his alleged symptoms, the ALJ evaluates the intensity and persistence of the symptoms. *See* SSR 16-3p, 2016 WL 1119029, at *8. The ALJ then must evaluate whether the claimant's subjective statements about his symptoms are consistent with: (1) the objective medical evidence; and (2) the other evidence in the record. *See* 20 C.F.R. § 404.1529(c)(2)-(3); SSR 16-3p. Under SSR 16-3p, the ALJ may consider factors such as: the objective medical evidence; whether the medical evidence is consistent with the claimant's allegations; medical source statements; the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's symptoms; aggravating or precipitating factors; and medication, treatment, and other measures to relieve pain. SSR 16-3p.

The ALJ considered Plaintiff's subjective complaints and concluded Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (R. 22.) The ALJ cited abundant objective medical and other evidence to support her conclusion, including Plaintiff's limited and conservative treatment, his previous ability to work full-time with many of the same complaints, and his current ability to persist in a part-time job. (*See* R. 22-24, citing, *e.g.*, R. 405-410, 425-463, 464-495, 503-539, 553-572, 293-295, 299-301, 328-329, 355-359 and 368-371.) Though Plaintiff's medical records clearly showed he had experienced foot

and finger numbness for ten years, it had not been worsening.  (*See, e.g.*, R. 509, 515, 538.)

Plaintiff testified he was working part-time as a van driver and could likely perform the job full-time if offered.  (R. 45-47, 51.)  And Plaintiff's medical examinations and activities of daily living did not support his reported disabling limitations.  (*See, e.g.*, R. 566, lumbar x-ray showing only discogenic spurring in the mid lumbar spine, mild leftward curvature, and mild facet degeneration in the lower lumbar spine; R. 556-556, MRI showing only moderate osteoarthritis, mild chondromalacia, medial meniscus junction sprain, patellar tendon lateral femoral condyle friction syndrome, mild; R. 483, 571, musculoskeletal examinations of the lumbar spine and left knee not detecting any abnormality; R. 41, 475, Plaintiff's testimony and treatment records showing medication and injections used to successfully treat impairments; R. 50, 205, 207, 242, 498, Plaintiff's testimony, self-reports, and exam notes discussing Plaintiff's daily activities, including singing, shopping, attending events, and walking in the mall.)

Plaintiff argues the ALJ should have limited him to sedentary jobs and contends she failed to articulate good reasons for discounting his subjective complaints.  (ECF No. 10 at 12-22; ECF No. 12 at 1-2.)  But the ALJ cited abundant evidence to support her finding that the record does not support the severity or intensity of Plaintiff's subjective complaints.  (R. 22-24.)  Plaintiff essentially asks the Court to reweigh the evidence, but that is not Court's prerogative.  *Schmitt v. Kijakazi*, 27 F.4d 1353, 1361 (8th Cir. 2022) ("Despite [Plaintiff's] dissatisfaction with how the ALJ weighed the evidence, it is not this Court's role to reweigh that evidence.").  That Plaintiff disagrees with the ALJ's Decision does not alter the fact that the ALJ properly evaluated the record, including Plaintiff's subjective complaints, and identified substantial evidence supporting her RFC determination.  The Court therefore rejects Plaintiff's argument that the ALJ erred in determining Plaintiff's RFC and the resultant jobs he could perform.

### 2.    The ALJ's Evaluation of Ms. Werner's Medical Opinion

Plaintiff also challenges the ALJ's determination that the medical opinions of his nurse practitioner, Christine Werner, were "not persuasive". (ECF No. 10 at 23-25; ECF No. 12 at 3-4.) He claims the ALJ failed to articulate sufficient reasons for her evaluation of Ms. Werner's opinions (ECF No. 10 at 23), and failed to address the supportability of Ms. Werner's opinions (ECF No. 10 at 23-24; ECF No. 12 at 3-4).

Ms. Werner provided her medical opinions on January 16, 2023 after treating Plaintiff for approximately one year (R. 541-545).   She opined that Plaintiff: (1) was limited to standing/walking less than 2 hours total in an 8-hour workday; (2) needed to change positions at will; (3) should never repetitively lift any weight; (4) was limited to rare twisting, bending and stair climbing, and precluded from crouching and climbing ladders; (5) had difficulty with fine motor skills and limitations in reaching, handling and fingering due to peripheral neuropathy; and (6) would be off task more than 25% of the workday due to his symptoms. (R. 541-545.)

Ms. Werner's examination of Plaintiff on January 10, 2023 at least partially supports her opinions. (*See* R. 551.)  The ALJ explained that she did not find Ms. Werner's opinions persuasive, however, because the limitations she imposed were excessive given Plaintiff's: (1) limited treatment; (2) ability to work part-time at his current level; (3) and testimony that he would perform his part-time work full-time if offered. (R. 23.)  The ALJ concluded, "this degree of limitation, in combination with the limited treatment, is not supported by the overall record."  (R. 23.)

Plaintiff argues that because Ms. Werner's "supported limitation opinions were more limiting than the ALJ's RFC," the Court should remand this matter so the ALJ "can consider and articulate the appropriate factors while determining the persuasiveness of Ms. Werner's opinions,

instead of just providing an articulation addressing only the consistency factor."  (ECF No. 10 at 24.)

An ALJ must "evaluate the persuasiveness of medical opinions by considering (1) whether they are supported by objective medical evidence, [and] (2) whether they are consistent with other medical sources …."  *Bowers v. Kijakazi*, 40 F.4th 872, 875 (8th Cir. 2022) (citing 20 C.F.R. § 404.1520c(c)).  But "[n]o talismanic language is required for the ALJ to meet the requirements of [section] 404.1520c, only that the ALJ make it clear that they considered the supportability and consistency of an opinion."  *Mario O. v. Kijakazi*, No. 21-CV-2469 (NEB/ECW), 2022 WL 18157524, at *11 (D. Minn. Dec. 13, 2022), *report and recommendation adopted*, 2023 WL 136590 (D. Minn. Jan. 9, 2023).  Moreover, under regulations revised in 2017, an ALJ cannot defer or give any specific evidentiary weight, including controlling weight, to any medical opinion or prior administrative medical finding, including those from medical sources.  20 C.F.R. § 404.1520c(a); *see also Bowers v. Kijakazi*, 40 F.4th at 875 (citing 20 C.F.R. § 404.1520c(a), "treating physicians are [no longer] entitled to special deference").

The ALJ was not persuaded by Ms. Werner's opinions because she found them unsupported by the record as a whole.  To support her conclusion, the ALJ cited Plaintiff's limited treatment history, his ability to work part-time, and his belief that he could work full-time if given the opportunity—all of which she detailed in her RFC analysis and supported with citations to evidence in the record.  (*See, e.g.*, R. 22-24, 45-47, 50-51, 205, 207, 242, 498.)  The ALJ was not required to use any specific language to indicate she considered the supportability of Ms. Werner's opinions, *Mario O.*, 2022 WL 18157524, at *11, and her Decision clearly reflects that she did.  To the extent Plaintiff argues the ALJ wrongly discounted or overlooked certain evidence supporting Ms. Werner's opinions, the Court reiterates that it is not the Court's role to reweigh the evidence.

15

*Schmitt*, 27 F.4d at 1361.  Moreover, the issue "is not whether substantial evidence exists to reverse the ALJ," but "whether substantial evidence supports the ALJ's decision."  *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010) (citing *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)).  Because the ALJ explained why she found Ms. Werner's opinions unpersuasive, and substantial evidence supports her finding, the Court cannot conclude the ALJ erred in evaluating Ms. Werneer's medical opinions and denies Plaintiff's request for relief on this ground.

### B.    The ALJ's Development of the Record

Plaintiff's final argument challenges the ALJ's development of the record.  (ECF No. 10 at 25-27; ECF No. 12 at 4-5.)  He asks the Court to remand this matter because the ALJ: (1) should have ordered a consultative examination or testing to evaluate Plaintiff's limitations and peripheral neuropathy before determining he could do full-time competitive work involving frequent fingering and standing or walking for most of a workday; (2) inappropriately "played doctor" to draw improper inferences from Plaintiff's left knee MRI and lumbar spine x-ray reports, when she should have ordered a consultative examination or called a medical expert to testify to Plaintiff's physical limitations resulting from his combination of impairments; and (3) failed to fully and fairly develop the record regarding his past work as a security guard, particularly during the period leading up to his termination from that job.  (ECF No. 10 at 25-27; ECF No. 12 at 4-5.)

But remand is warranted only when the ALJ's factual findings are insufficient for meaningful appellate review.  *Scott*, 529 F.3d at 822.  The ALJ was not required to further develop a record that was already sufficient to resolve any conflicts in the evidence.  20 C.F.R. § 404.1520(b); *see also Matthews v. Bowen*, 879 F.2d 422, 424 (8th Cir. 1989).  And as discussed above, the ALJ clearly explained how she determined Plaintiff's RFC and identified substantial evidence supporting her Decision.  Plaintiff's argument is essentially another iteration of his claim

that the ALJ improperly weighed the record evidence, by suggesting there was insufficient evidence to start with.  But the record is replete with evidence to support the ALJ's Decision, the Court is able to trace the ALJ's logical path to her conclusions, and Plaintiff's dissatisfaction with how the ALJ weighed the evidence does not establish grounds for a remand.  *Schmitt*, 27 F.4d at 1361.  For these reasons, the Court denies Plaintiff's request for relief on this basis as well. Because Plaintiff fails to identify any error in the ALJ's Decision warranting remand, the Court denies Plaintiff's Request for Relief in its entirety.

## ORDER

Based on all the files, records, and proceedings herein, **IT IS ORDERED** that:

1.      Plaintiff's Request for Relief (ECF No. [10]) is **DENIED**;

2.      Defendant's Request for Relief (ECF No. [11]) is **GRANTED**; and

3.      This matter is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated: August 13, 2024                          *s/ Dulce J. Foster*
                                                DULCE J. FOSTER
                                                United States Magistrate Judge

17